NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUBEN MEJIAS, | Civil Action No. 14-5875 (CCC) |
| Petitioner, | |
| v. | **OPINION** |
| KENNETH NELSEN, et al., | |
| Respondents. | |

**CECCHI, District Judge:**

Petitioner Ruben Mejias, confined at the Northern State Prison in Newark, New Jersey, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed by the State of New Jersey for robbery and related offenses. Respondents have filed a Response, and Petitioner has filed a Reply. For the reasons stated below, the Court denies the Petition.

I. FACTUAL BACKGROUND

For the purposes of this Opinion, the Court relies on the following findings of fact by the state appellate court on direct appeal:

> On January 3, 2005, Mr. Mauricio Thiebaud, a 63 year-old employee of World Wide Wholesale Trading, Inc. (World Wide), traveled from Bronx, New York to a tobacco wholesaler known as Pine Lesser & Company (PL&C) in Clifton. Because World Wide agreed to purchase tobacco products in cash, Thiebaud frequently carried large sums of money when he made purchases from PL&C. On this date, Thiebaud was carrying $22,000.
>
> Thiebaud arrived at PL&C and pulled into the driveway. He looked around and saw defendant, who was wearing a gray sweatshirt and jeans, pacing back and forth on Lakeview Avenue beyond the PL&C entrance. Thiebaud waited two minutes then exited his van. Without saying a word, defendant approached Thiebaud and punched him in the face. Defendant continued hitting Thiebaud about the head and ribs. When Thiebaud dropped the money bag he was carrying,

defendant grabbed the money, ran toward the street and was picked-up by an approaching gray four-door vehicle with Pennsylvania license plates. Thiebaud ran toward the car and scratched it with a box cutter. Thiebaud saw another man waiting across the street by a green van, who he believed saw the entire incident, but did not come to his aid.

Benjamin Ocampo also witnessed the incident, as he sat in his van across the street from PL&C. Ocampo alerted the police and followed the gray car as it drove away. Initially, a green van with Pennsylvania plates impeded Ocampo's pathway. Ocampo drove around the green vehicle and looked for the gray car. He drove around the block and saw the car had stopped. Ocampo watched the two male occupants exit the car and begin walking. The driver of the gray car, later identified as Toribio, was apprehended by police. Defendant kept walking. When defendant was approached by Officer Napoleone, he took off on foot. Thereafter, defendant was cornered and arrested. The search of defendant's person, incident to arrest, revealed a plastic bag of money stuffed into his waistband.

Ocampo identified defendant as the man who attacked Thiebaud. Also, Thiebaud identified: (1) Toribio as "one of the guys" involved in the incident; (2) the car defendant entered as he left PL&C; (3) the money found on defendant as World Wide's funds; and (4) defendant as his attacker.

When apprehended, defendant was wearing a dark pullover with the word "Brooklyn" across the front. This shirt and a gray hooded sweatshirt were included in the police property inventory when defendant was jailed. Additionally, included among defendant's possessions was a single key.

Defendant testified on his own behalf. He stated he approached Thiebaud to speak to him regarding repayment of a debt owed to Toribio. Toribio offered to pay defendant $1,500 for his assistance. Also, Toribio gave defendant a key to Thiebaud's truck, and told him to "use this if he locks himself in the truck." Defendant explained he often aided others in this way "to help them with their problems."

As defendant "approached [Thiebaud] to speak to him," he stated Thiebaud pulled a "knife" from his back pocket. Defendant admitted he punched Thiebaud in the head "a few times." Defendant testified he struck Thiebaud in self-defense and continued hitting him until he was "no longer a threat." It was then, that defendant noticed two clear bags of money had fallen from the plastic bag Thiebaud held. Defendant grabbed the larger of the two bundles and ran to Toribio's car. When defendant looked back, he saw Thiebaud coming at him with the "knife" in his hand. Defendant saw Thiebaud scratch Toribio's car with the weapon.

Defendant stated he had no intention of using force to obtain payment of Toribio's debt, and he had no idea Thiebaud was carrying tens of thousands of dollars. Defendant admitted he ran from the police "because they all had their guns

2

out and they were like 'freeze.'" Defendant also stated he put the money in the pocket of his hooded sweatshirt, which he threw to the ground as he fled.

(ECF No. 9-16 at 3-6).

Petitioner was convicted in a jury trial of robbery and resisting arrest. (*Id.* at 2).

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim:

> (1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 567 U.S. 37, 40 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 562 U.S. 594, 598 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual

3

findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (holding that a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (holding that factual determinations of state trial and appellate courts are presumed to be correct).

### III. DISCUSSION

#### A. Merits

Petitioner raises a single ineffective assistance of counsel claim in his Petition. According to Petitioner, he had asked his attorney to raise a self-defense argument at trial, but the attorney chose to pursue a different strategy, namely that Thiebaud was a co-conspirator of the "robbery," essentially suggesting that the robbery was staged and this was an inside job. This strategy, Petitioner argues, was inconsistent with—and in fact sabotaged—his wish to assert self-defense.

The state court rejected Petitioner's argument in his post-conviction relief ("PCR") proceeding, finding that counsel was not ineffective because Petitioner's self-defense strategy had little chance of success. (ECF No. 9-27 at 8-9).

> Faced with little to work with, defense counsel attempted to dovetail defendant's testimony with a suggestion to the jury that the victim owed a debt and was complicit in the staging of a robbery. On the witness stand, however, Thiebaud repeatedly testified that he had no prior contacts with defendant or co-defendant Toribio and did not owe the latter any money, and the jury apparently believed him.

(*Id.* at 9). The state court further found that evidence of guilt against Petitioner was overwhelming. (*Id.* at 10). "[D]efendant simply lacked a credible defense in the face of very strong evidence of his guilt." (*Id.* at 11).

The Court finds that the state court's holding was a reasonable application of established federal law. No matter what Petitioner's motivation was in confronting Thiebaud, even in Petitioner's own story, he forcibly extorted a sum of cash from Thiebaud without his consent. The law does not permit Petitioner's conduct, even if Thiebaud did owe him or Toribio money. What Petitioner did, as he described it, was in fact robbery—the collection of debt through the use of physical force by a private person—which is not a recognized lawful remedy for debts owed, and is against the law.[1] *See State v. Ortiz*, 305 A.2d 800, 801 (N.J. Super. Ct. App. Div. 1973) (holding that the fact that defendant may have been attempting to collect a debt was no defense to a charge of robbery); *id.* at 802 ("In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand."); *see also State v. Malcolm*, No. A-3186-04T4, 2007 WL 1468611, at *8 (N.J. Super. Ct. App. Div. May 22, 2007) ("Furthermore, defendant's legal argument that he did not commit the crime of robbery because he was reclaiming his own property is contrary to the law of this State. We have previously rejected the proposition of 'self-help through violence' in instances where the defendant was accused of robbery and claimed that the

---

[1] Petitioner attempts to argue in his brief that his taking of the bag of money from Thiebaud was "an afterthought." (ECF No. 1-1 at 10). Even if the Court believes Petitioner's story, however, Petitioner nonetheless grabbed the bag of money, after utilizing force, as payment for debt owed. As such, Petitioner's argument is without merit.

5

property belonged to him."). Whether Petitioner intended on using force was irrelevant, because force was in fact used, and it was foreseeable that force may be used; after all, Petitioner himself admits that he was hired as "the muscle" for the purpose of collecting a debt. (ECF No. 1-1 at 5).

"All the evidence, including that admitted or volunteered by defendant, provided ample opportunity for the prosecution to argue that the essential elements of the crime of robbery had been proven, including that defendant used force in the course of taking property to which he had no right." (ECF No. 9-27 at 10 (citing N.J.S.A. § 2C:15-1 ("A person is guilty of robbery if, in the course of committing a theft, he . . . [i]nflicts bodily injury or uses force upon another[.]")). There is no "self-defense" in a robbery offense. Had Petitioner been on trial for, as an example, aggravated assault, then his self-defense argument may bear some relevance, however Petitioner was on trial for robbery. The Court is in agreement with the state court that counsel did his best to salvage the case, despite Petitioner's insistence on providing testimony that essentially admitted his guilt. Counsel mounted a creative defense for his client and counsel's assistance was not ineffective in this matter.[2]

### B. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial

---

[2] Petitioner also argues that the state court's refusal to hold an evidentiary hearing in his PCR proceeding was erroneous. However, that is not a cognizable claim on federal habeas. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation."); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[H]abeas proceedings are not the appropriate forum for [Petitioner] to pursue claims of error at the PCRA proceeding.").

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 327.

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability.

Dated: October 18, 2017

**Claire C. Cecchi, U.S.D.J.**